## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| **Michael Dante Hughes and** | : |
| **Angela Ann Hughes** | : |
| | |
| v. | : Civil Action No. |
| | : |
| **PHH Mortgage Corporation** | : |
| a/k/a PHH Mortgage Services | |
| and Equifax Information | |
| Services | |

## COMPLAINT

Jury Trial Demanded

Plaintiff Angela Ann Hughes and Michael Dantes Huges, by and through counsel, bring this complaint against Defendant PHH Mortgage Corporation a/k/a PHH Mortgage Services and Equifax Information Services on the grounds set forth below.

## PRELIMINARY STATEMENT

The Plaintiff brings this action for damages based on Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. section 1681, et seq. ("FCRA"), violation of the terms of a settlement agreement between the Parties entered into on August 23, 2021, Breach of the terms of the Note and Mortgage by PHH, and Unfair Trade Practices. The Plaintiff is seeking an order correcting the information reported in their credit reports, actual damages, punitive damages, costs, and attorneys fees as part of this action.

## PARTIES

1. Plaintiffs Angela Ann Hughes and Michael Dante Hughes are natural persons and are residents and citizens of the State of South Carolina. They are both 'persons' and 'consumers' as defined by the FCRA at 15 U.S.C. section 1681a(b) and (c) because they are individuals.

Unless otherwise specifically stated herein, the term 'Plaintiff' shall refer to Mr. and Mrs. Hughes.

2. Defendant PHH Mortgage Corporation a/k/a PHH Mortgage Services ('PHH) is a foreign corporation with its principal office located in Mount Laurel, New Jersey. It maintains a registered agent in South Carolina at Corporation Service Co, 508 Meeting Street, West Columbia SC 29169.

3. Defendant Equifax Information Services, LLC ('Equifax') is a foreign corporation organized under the laws of Georgia with a registered agent, Corporation Service Company, at 508 Meeting Street, West Columbia SC 29169.

4. Based on information and belief, PHH services residential mortgage loans throughout South Carolina. PHH is a furnisher of information under the FCRA, it has and does furnish information to the CRAs about Mr. and Mrs. Hughes.

5. Based on information and belief, Equifax is not licensed to do business in the state of South Carolina. Is is a consumer credit reporting agency as defined in section 1681(f) FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) FCRA, to third parties.

## JURISDICTION AND VENUE

6. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. section 1681(p) and over claims arising under state law pursuant to 28 U.S.C. section 1367.

7. Venue is proper in this jurisdiction as the plaintiff's claims arose from acts of the defendants perpetrated against the plaintiff in the District of South Carolina.

**FACTUAL ALLEGATIONS**

8. On September 7, 2016, Mr. and Mrs. Hughes filed a Plan of Reorganization under Chapter 11 of the US Bankruptcy Code in case 16-04559. The Plan was confirmed on August 7, 2017.

9. At the time of the 2016 bankruptcy, the mortgage was owned and serviced by US Bank, as trustee, and Ocwen. PHH became the owner and/or servicer later. PHH's predecessors in interest participated in the bankruptcy. They were properly notified of the Chapter 11 filing and the Order Confirming the Plan.

10. In 2019, Ocwen, the predecessor to PHH, made several errors in the servicing of the loan that were in violation of the plan. It added additional insurance policies when Mr. and Mrs. Hughes already had policies in place and had provided proof of these policies and failed to properly account for payments made. During this process, PHH became the servicer of the Mortgage.

11. There were several issues with the account and the credit report. Unable to get PHH to make the corrections voluntarily, Mr. and Mrs. Hughes re-opened the bankruptcy originally filed in 2016 in order to file an adversary case against PHH.

12. This case was settled by an agreement that was finalized on August 23, 2021. In the settlement agreement, each party was to bear their own attorneys' fees and costs, PHH would report no late payments since January 2019, it would charge off the $43,000.00 unsecured portion of the loan, and all payments made under the bankruptcy plan were to be applied to the secured portion of the loan that had a $150,000 balance as of 2016 with a 5.25% interest rate.

13. Soon after the settlement, PHH began misapplying the payments made by Mr. and Mrs. Hughes.

14. Mrs. Hughes reached out to them repeatedly to have the matters corrected but was rebuffed and PHH refused to correct the account.

15. In a statement from PHH dated November 16, 2021 PHH said:

    a. The maturity date of the loan was 2036. It should be 2046.

    b. It was escrowing more than lawfully allowed.

    c. It was putting money into a suspense account instead of applying funds to the regular monthly payments.

16. On June 1, 2022, PHH sent a letter claiming that the mortgaged property was in a Special Flood Hazzard Area and that Mr. and Mrs. Hughes needed to update their flood policy. It is not, and Mrs. Hughes confirmed this with her insurance agent.

17. On May 30, 2023, PHH sent a letter to the Plaintiffs admitting to charging $250.00 for bankruptcy attorney's fees and completely ignoring the settlement agreement in place where the parties were to be responsible for each other's fees and all of the payments made were to be applied to the regular payments for the $150,000 loan. This $250.00 for the attorney's fee was charged to the account. PHH then used the funds from the regular monthy payment to pay for this before it applied the payment to the regular monthly payment that was due. This caused their account to show that they did not make the regular monthly payment which caused the account to show as late when it was not late.

18. The May 30, 2023 letter also admitted that they were paying an insurance policy other than the one purchased by Mr. and Mrs. Hughes.

19. Finally, it admitted to the misapplication of the payments to a 'principal curtailment.' There is no principal curtailment. There is only the secured portion of the loan. All payments since 2016 are to be applied to the principal portion of the loan only.

20. Since discovering the errors, Mr. and Mrs. Hughes have made every effort to correct the mistakes on their credit history with no results and have tried to have PHH make the corrections to their account. The only recourse was for them to make the payments to mitigate the damage. Even then, they have been damaged by having a lower credit score, increased cost of borrowing, thousands of additional dollars charged to their account that they should not have to pay, as well as the additional emotional damage from the stress of dealing with the bad actions of PHH.

EQUIFAX DISPUTES

21. Mr. and Mrs. Hughes have sent multiple requests to Equifax about these errors and sent a dispute letter to Equifax explaining the error and asking the information to be corrected.

22. As of the date of the filing of this complaint, Mr. and Mrs. Hughes Equifax credit reports are still reporting the late payments reported by PHH.

23. Mr. and Mrs. Hughes are informed and believe that Equifax has not upheld its duties and responsibilities under the FCRA.

PHH Mortgage

24. The Plaintiff is informed and believes that Equifax contacted PHH with one or more of these disputes to verify the information from PHH as the furnisher of the information.

25. PHH has repeatedly failed to adequately investigate the dispute after receiving notice of the dispute by the consumer from the CRAs.

26. Mr. and Mrs. Hughes have communicated repeatedly with PHH and the CRAs asking them to correct the errors via letters and email.

27. PHH has refused to make the corrections to the account and have continued to charge excess amounts to their mortgage account, reporting delinquent payments when Mr. and Mrs. Hughes do not pay these illegal sums.

28. Mr. and Mrs. Hughes have suffered actual damages because of the actions of the Defendants. They have been denied credit and were only able to get credit at increased interest rates. They have also suffered emotional distress. Their employment is dependent on their creditworthiness. They have had to pay more for credit and were unable to refinance inorder to get a lower interest rate. This has caused them significant stress and it is imperative that they obtain relief as soon as possible to minimize their damages.

**FIRST CAUSE OF ACTION: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. SECTION 1681c(f) AND SECTION 1681i(c)**
**AGAINST EQUIFAX**

29. The plaintiffs incorporate paragraphs 1 through 28 as if fully stated herein.

30. Pursuant to 15 U.S.C. section 1681a(b) all of the named defendants in this action are a 'person' as defined by the FCRA as they are corporations.

31. Pursuant to 15 U.S.C. section 1681a(c) the plaintiffs are individuals and consumers as that term is defined by the FCRA.

32. Pursuant to 15 U.S.C. section 1681c(f), section 1681i(c) among other code sections and common law, a consumer reporting agency shall clearly note that an entry is disputed by the consumer when a statement of dispute is filed and there are no reasonable grounds to believe that the dispute is frivolous or irrelevant.

33. Mr. and Mrs. Hughes disputed information on the PHH account that is the subject of this action several times and Equifax never made any notation of the dispute on their credit reports.

34. Mr. and Mrs. Hughes disputes were not frivolous. In fact, the credit reports on the face of them are in error when they are showing late payments that were not late.

35. This violation was negligent, reckless, willful, and intentional.

36. Pursuant to 15 U.S.C. section 1681o(a) any person who fails to comply with any requirement under the FCRA will pay to the harmed consumer actual damages, statutory damages and attorneys fees and costs. If the failure to comply with the FCRA is deamed to be willful or reckless then, pursuant to 15 U.S.C. section 1681n(a) the consumer is entitled to an award of up to $1,000.00 statutory damages, punitive damages, and attorneys fees and costs.

37. Plaintiff requests that this court order that the credit report be corrected, and award them statutory damages, punitive damages, attorneys fees, and costs.

**SECOND CAUSE OF ACTION: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. SECTION 1681e(b) AND SECTION 1681i(c)**
**AGAINST EQUIFAX**

38. The Plaintiffs incorporate paragraphs 1 through 37 as if fully stated herein.

39. Pursuant to 15 U.S.C. section 1681a(b) all of the named defendants in this action are a 'person' as defined by the FCRA as they are corporations.

40. Pursuant to 15 U.S.C. section 1681a(c) the plaintiffs are individuals and consumers as that term is defined by the FCRA.

41. Pursuant to 15 U.S.C. section 1681e(b) consumer reporting agencies are required to follow reasonable procedures to assure maximum accuracy of the information contained in the report.

42. Mr. and Mrs. Hughes are informed and believe that Equifax failed to follow reasonable procedures to ensure the information contained in the credit reports they provided about Mr. and Mrs. Hughes was accurate.

43. Mr. and Mrs. Hughes made repeated attempts to inform the defendants of the error and to get the correct information reported.

44. If Equifax had followed reasonable procedures then this error would have been cleared up prior to the filing of this action and prior to these errors causing them any damage.

45. This violation of 1681e(b) was negligent, reckless, willful, and intentional.

46. Pursuant to 15 U.S.C. section 1681o(a) any person who fails to comply with any requirement under the FCRA will pay to the harmed consumer actual damages, statutory damages, and attorneys fees and costs. If the failure to comply with the FCRA is deemed to be willful or reckless then, pursuant to 15 U.S.C. section 1681n(a) the consumer is entitled to an award of up to $1,000.00 statutory damages, punitive damages, and attorneys fees and costs.

47. Plaintiffs request that this court order that the credit report be corrected, and award them statutory damages, punitive damages, attorneys fees, and costs.

### THIRD CAUSE OF ACTION: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. SECTION SECTION 1681s-2(b)
### AGAINST PHH

48. The Plaintiffs incorporate paragraphs 1 through 47 as if fully stated herein.

49. Pursuant to 15 U.S.C. section 1681s-2(a)(2) furnishers of information to credit reporting agencies are required to ensure the information they provide is accurate and complete.

50. Pursuant to 15 U.S.C. section 1681s-2(b)(1) furnishers of information have a duty to ensure that information they are reporting is complete and accurate and to review previously submitted information for this purpose.

51. PHH is a Mortgage Servicing Company that regularly and in the ordinary course of business furnishes information to all three CRAs.

52. PHH, after being contacted by the Plaintiffs and the CRAs, has not ensured that the information it was providing to the CRAs was complete and accurate. If it was following

proper procedures then it would have realized that the Plaintiffs were telling the truth and it was reporting incorrect information.

53. Based upon the conversations with representatives of PHH, Mr. and Mrs. Hughes are informed and believe that PHH was unable to confirm the accuracy of the information it was reporting to the CRAs. Instead of removing the information as required under the FCRA, PHH either decided to continue reporting information it knew it could not verify and was inaccurate or it did nothing. The fact that they completely ignored the terms of a settlement agreement leads to only one of these two options. Either of these courses of action is prohibited under the FCRA.

54. This violation of 1681s-2(b)(1) was negligent, reckless, willful and intentional.

55. Pursuant to 15 U.S.C. section 1681o(a) any person who fails to comply with any requirement under the FCRA will pay to the harmed consumer actual damages, statutory damages, and attorneys fees and costs. If the failure to comply with the FCRA is deemed to be willful or reckless then, pursuant to 15 U.S.C. section 1681n(a) the consumer is entitled to an award of up to $1,000.00 statutory damages, punitive damages, and attorneys fees and costs.

56. Plaintiff requests that this court order that the credit report be corrected, and award him statutory damages, punitive damages, attorneys fees and costs.

### FOURTH CAUSE OF ACTION: SLANDER OF CREDIT
### AGAINST ALL DEFENDANTS

57. The plaintiffs incorporate paragraphs 1 through 56 as if fully stated herein.

58. The Defendants were each involved in making statements that were false and defamatory through reporting false information on Mr. and Mrs. Hughes' credit reports.

59. The Defendants knew or should have known that the information they were publishing was false.

60. These statements are both slander per se and caused acutal harm to Mr. and Mrs. Hughes by impairing thier ability to borrow money and threatening their livelihood.

61. The Defendants acted such recklessness that their actions can only be construed as having conscience indifference towards the Plaintiff's rights.

62. Mr. and Mrs. Hughes request that this court award them compendasatory damages, punative damages, attorneys fees and costs.

## FIFTH CAUSE OF ACTION: UNFAIR TRADE PRACTICES AGAINST PHH

63. The plaintiffs incorporate paragraphs 1 through 62 as if fully stated herein.

64. The factual allegations above, plus any facts that Plaintiffs may later establish at any hearing or trial in this matter constitute a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), as may be found at South Carolina Code Sec. 39-5-10 *et seq.*.

65. To establish a violation of the SCUTPA, Plaintiff must establish that a Defendant has engaged in either unfair methods of competition or deceptive acts and practices in the conduct of any trade or commerce in South Carolina. It is also necessary to show that the improper conduct have an adverse impact upon the public interest, which requires that the improper conduct have the potential for repetition, which may be shown either by showing that the same kind of actions happened in the past or by showing that the Defendant's procedures create a potential for repetition of the improper conduct.

66. A violation of the SCUTPA allows any person who has lost money or property as a result of the unfair or deceptive acts or practices to recover actual damages, plus reasonable attorney fees and costs. If the court finds that the SCUTPA violation was willful or knowing, then

the court must award treble damages, and may provide such other relief as is necessary or proper.

67. Defendant's actions which are alleged above to be unfair, unconscionable, false, misleading or deceptive violate the SCUTPA.

68. Defendant PHH is a company which services mortgages in South Carolina. It accepts payments, applies those payments to loans, and accounts for the amounts due on mortgage loans of South Carolina Consumers. These actions constitute part of their normal trade or commerce in the state of South Carolina.

69. Upon information and belief, PHH acted in accordance with its normal policies and procedures when handling the misapplication of the funds and incorrect reporting to the CRAs. This demonstrates the element of potential for repetition which is required in order to violate the SCUTPA.

70. PHH either knew or should have known that their actions as alleged above were in violation of South Carolina law.

71. PHH's actions described in this complaint in violation of South Carolina law as indicated above were unfair or deceptive.

72. PHH's actions in demanding attorneys' fees it was not entitled to and taking those fees from amounts that should have been applied to the regular monthly payment. When the Plaintiffs failed to make up the claimed difference, PHH reported the account as delinquent to the CRAs. These actions are unfair and deceptive.

73. PHH's action in billing the Plaintiffs for insurance when they already had a policy in place and it was paid for. PHH put a duplicative policy of it's choosing on the property and billed the Plaintiffs for this policy.

74. PHH should be enjoined from any further violations of the SCUTPA.

75. Plaintiffs reserve the right to establish such other violations of the SCUTPA as Plaintiffs may be able to prove at any hearing or trial in this matter.

### SIXTH CAUSE OF ACTION: BREACH OF SETTLEMENT AGREEMENT AGAINST PHH

76. The plaintiffs incorporate paragraphs 1 through 75 as if fully stated herein.

77. The Plaintiffs and PHH entered into a settlement agreement in adversary case 19-80060 in the United States Bankruptcy Court District of South Carolina. One of the terms of this settlement is that PHH would bear its own attorney's fees for the bankruptcy.

78. PHH charged attorney's fees for the bankruptcy against the account for Mr. and Mrs. Hughes and then redirected their regular payment to pay for these fees. This resulted in them being reported late to the CRAs.

79. PHH's actions are a breach of the terms of the settlement agreement.

80. The Plaintiffs are requesting actual damages for this breach of the settlement agreement.

### SEVENTH CAUSE OF ACTION: BREACH OF CONTRACT AGAINST PHH

81. The plaintiffs incorporate paragraphs 1 through 80 as if fully stated herein.

82. The Plaintiffs and PHH are both parties to a Note and Mortgage. The Note and Mortgage govern what charges PHH can and cannot assess against the Plaintiffs. PHH has repeatedly

attempted to charge for property insurance when Mr. and Mrs. Hughes already have insurance in place on the property.  This is a breach of the terms of the note and mortgage.

83. PHH has also continued to misapply payments causing the account to be inaccurate.

84. PHH has a duty to comply with all terms of the Note and Mortgage.

85. The Plaintiffs are requesting actual damages for this breach of contract.

WHEREFORE, the Plaintiff prays that this court award it the following relief:

a. That this action be heard before a jury.

b. An order compelling the Defendants to remove any and all information from the credit report of the Plaintiff.

c. Compensatory Damages in an amount to be determined by a jury;

d. Punitive Damages against the Defendants in an amount to be determined by a Jury;

e. Statutory Damages against all the defendants;

f. Interest, costs and a reasonable attorneys fees incurred by the plaintiff;

g. For such other and further relief as the Court may deem just and proper.

Respectfully submitted, this 27th day of February, 2024.

/S/   **Shawn M. French**
**Shawn M. French**, District Court ID: 9941
1476 Ben Sawyer Blvd, Ste. 3
Mount Pleasant SC 29464
843-606-6440
shawn@thefrenchlawfirm.com